### H C WHITMER CO v TROESCH et

Ohio Appeals, 3rd Dist, Union Co

No 162. Decided Feb 15, 1935

Richard C. Thrall, Marysville, for plaintiff in error.

Milo L. Myers, Marysville, for defendants in error.

## OPINION

By GUERNSEY, J.

There are a number of assignments of error but as the whole case may be disposed of upon consideration of the assignment of error that the verdict and judgment are against the weight of the evidence and contrary to law, this will be the only assignment considered, and it will be first considered in relation to the verdict and judgment against Troesch, and second in its relation to the verdict and judgment against Mader, Burns and Conrad.

■ The execution of the written agreement entered into between the plaintiff and the defendant Troesch being undisputed, and the defendant Troesch in his testimony having admitted the ordering of the merchandise and the receipt of the same by him, and that the aggregate of the merchandise purchased and the payments and also the credits for returned merchandise thereon and the balance due thereon are in the amounts claimed by the plaintiff, it is clear that the verdict and judgment as against Troesch are neither against the weight of the evidence nor contrary to law unless Troesch is entitled to the credit claimed by him by way of the chewing gum distributed by him for advertising purposes and the goods remaining in the hands of his customers following the termination of the contract.

It is clear from Troesch's own evidence that the chewing gum was ordered by him on order blanks of the company specifying the purchase of such gum by him at the prices mentioned in said order. The use by him of this gum for advertising purposes did not in any way change his liability for the purchase price thereof, and as the plaintiff under the contract was not under any obligation to furnish such gum free of charge, it is clear that as a matter of law the defendant Troesch was not entitled to any credit therefor.

With reference to the goods remaining in the hands of customers after the termination of the agreement, the evidence of Troesch shows that these goods were ordered in the ordinary manner and at the prices provided in the contract; and that he left them with his customers on his own ac-

count with the understanding that such customers would pay him for such goods when such goods were used or consumed by them. While the plaintiff from time to time directed or suggested he handle his sales in this manner, this, as between them, was not in any way inconsistent with the terms of the contract and did not in any way modify his obligation to pay for the goods, and consequently the defendant Troesch was not as a matter of law entitled to any credit on the claim of the plaintiff for such goods. The evidence therefore shows that the defendant Troesch was liable to the plaintiff for the full amount claimed by plaintiff from him, and this being the case the verdict of the jury in his favor was contrary to law in that it was not sustained by and was contrary to the evidence, and the judgment in his favor should be reversed for this reason, at his costs, and the cause, as against him, remanded for a new trial and further proceedings according to law.

■ As the evidence in the case, as above mentioned, conclusively shows the liability of 'Troesch for merchandise purchased by him in accordance with the contract, in the sum of $375.00 claimed by the plaintiff, the question as to whether the verdict and judgment in favor of Mader, Burns and Conrad, as guarantors, are against the weight of the evidence and contrary to law is to be decided by resort to the terms of their guaranty, the execution of which is admitted, to determine the obligation of the guarantors and to the evidence to determine whether the obligation has been discharged.

It will be noted that there are no words or terms in the guaranty indicating that the credit to be extended relates to any transaction other than an immediate transaction or that it applies to any sale other than an immediate sale; and it appears that the agreement, the honest and faithful performance of which is secured by the guaranty, is the agreement of Troesch to comply with the terms of the credit extended to him pursuant to the guaranty, the guaranty in terms not in any way referring to the contract between Troesch and The Whitmer Company appearing on the same sheet above the guaranty, and being complete in and of itself.

However, the only reference to credit in the written agreement between Troesch and The Whitmer Company, is to the effect that Troesch desires to purchase of The Whitmer Company on credit and at wholesale prices to sell again to customers, medicines and other goods manufactured and put up by said company. It will be noted that there is no provision as to a continuing credit and there is no provision indicating that a series of sales on credit is contemplated.

In 20 **Ohio Jurisprudence, at pages 196 and 197,** in commenting upon the rules of construction relating to contracts of guaranty, and particularly on the question as to whether the language of the guaranty should be construed as creating a limited or a continuing guaranty, the author quotes with approval from the opinion in the case of **Birdsell v Hancock, 32 Oh St, 177,** as follows:

"The chief difficulty lies in determining what interpretation should be put on a guaranty which is so worded that it may either extend to a series of sales or advances, or be limited to the first. The better opinion would seem to be that such an instrument should be confined to the immediate transaction, unless the language of the promise is sufficiently broad to show that it was meant to reach beyond the present, and render the guarantor answerable for future credits. The tendency of decisions in this country has, accordingly, been against construing guaranties as continuing, unless the intention of the parties is so clearly manifested as not to admit of a reasonable doubt."

And in the case of **Merchants National Bank v Cole, 83 Oh St, 50,** the Supreme Court announced the rule that an unlimited guaranty is equivocal or ambiguous in respect of being continuing, in the absence of words that clearly impart such an intention.

Applying these rules of construction to the guaranty in the instant case, whether such guaranty is considered as being independent of and disconnected with the written contract between the plaintiff and Troesch, or as guaranteeing the performance of the written contract on the part of Troesch, it appears that as there is no provision in either the guaranty itself or the contract indicating that the guaranty is to extend to any transaction other than an immediate transaction in connection with the extension of credit by the plaintiff to Troesch, or indicating that it is to apply to future transactions, the guaranty is not a continuing guaranty and applies only to the extension of credit made on the same date the contract and guaranty were signed.

There is also another rule of construc-

tion which we think is peculiarly applicable to this case. This rule is stated in **13 C. J. at page 545**, as follows:

"Where a contract is ambiguous it will be construed most strongly against the party preparing it or employing the words concerning which doubt arises, the reason for the rule being that a man is responsible for ambiguities in his own expressions and had no right to induce another to contract with him on the supposition that his words mean one thing, while he hopes the court will adopt a construction by which they would mean another thing more to his advantage."

The written contract and the contract of guaranty in this case were prepared by the plaintiff who employed the expressions which are ambiguous, and is responsible for them. It is apparent from the contract and the guaranty that the expressions thus employed were employed for the purpose of inducing the guarantors to believe that their liability thereunder was limited both in time and amount, and not, as now contended by plaintiff, unlimited both as to time and amount.

Under the rule last mentioned the construction should be adopted which will correspond to the meaning which the plaintiff by the use of such expressions intended the guarantors to have of their obligation under the guaranty, and construed in this manner the same result is reached as under the other rules of construction hereinbefore referred to.

As the obligation of the guarantors under the guaranty, as hereinabove construed, was limited to the extension of credit made on the same day the contract and guaranty were signed, the guarantors were discharged by the payment by Troesch of the amount of the first extension of credit under the contract, which is admitted in the evidence, and are not liable for the balance owing on the contract by Troesch.

Furthermore, the contract between the plaintiff and Troesch, as hereinbefore mentioned, contemplated the purchase by Troesch from the plaintiff on credit at wholesale prices for **sale again** to Troesch's customers of certain merchandise. The phrase "sale again" used in this connection contemplated a sale in the ordinary course of business and did not contemplate the purchase of goods by Troesch for the purpose of placing them on consignment with his customers which was done at the suggestion and direction of plaintiff. While Troesch by his conduct acquiesced in making purchases of goods for such purposes, and for that reason is liable for purchases made, the guarantors, as shown by the evidence, did not assent to any such deviation from the terms or purposes of the contract, and as to them the purchases made by Troesch, upon the suggestion and instruction of the plaintiff for such purpose, were not within the purview of the contract and/or the guaranty and the guarantors are not liable under their guaranty therefor.

For the reasons mentioned, the verdict and judgment in favor of the guarantors Mader, Burns and Conrad is not against the weight of the evidence nor contrary to law, and will be affirmed at costs of plaintiff in error.

KLINGER, J, concurs.

CROW, J.

Taking the contract between The Whitmer Company and Troesch, and the agreement of guaranty thereof, by the four corners, there is in my opinion no ambiguity, various portions of the language evincing a clear intent that until termination of the contract between The Whitmer Company and Troesch, they and the guarantors should continue bound.